**BRAIN TRUST, INC., a Missouri Corporation, Plaintiff-Respondent,**

v.

**CITY OF RAYTOWN, Missouri, a Municipal Corporation, et al., Defendants-Appellants.**

**No. KCD 26700.**

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

Richard T. Cole, Raytown, for defendants-appellants.

James S. Cottingham, Independence, for plaintiff-respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant City appeals from an order of the circuit court in which the court declared, in a suit requesting a declaratory judgment, the action of the Board of Aldermen of the City, in denying plaintiff's application for rezoning, to be arbitrary, unreasonable, discriminatory and confiscatory. The court ordered the City to rezone plaintiff's property from District "R–2" to District "C–0". The court further permanently restrained and enjoined the City from interfering with the plaintiff or anyone claiming by, through, or under it, in using plaintiff's property under such commercial zoning.

This court finds the judgment of the circuit court to be supported by substantial evidence and affirms the same.

At the threshold of this case is a motion by the plaintiff to dismiss the City's appeal for failure to follow the rules. The City has filed an amended brief, and while such brief is not a model of compliance with the rules, in the exercise of the discretion vested in this court, the motion to dismiss the appeal is overruled. It may be noted, however, that once again a failure to comply with the very plain and simple rules governing appeals has resulted in a motion, together with suggestions, being filed, and in the City filing two briefs in this court. It should now be manifestly clear that it is much easier, faster and less expensive to take the small amount of time required to examine the rules and to fashion an appeal in conformance therewith, than it is to disregard such rules.

Plaintiff began its efforts to rezone a vacant lot at the northwest corner of 76th Terrace and Raytown Road by filing an application with the City Planning and Zoning Commission. Plaintiff had previously filed an application to rezone this tract to District "C–2", but following the hearing on that application, decided to withdraw such application and filed a new one asking for a change to District "C–0".

The Commission held a hearing on the first application at which the only evidence introduced came from Robert C. Chiles, president of the plaintiff corporation. Mr. Chiles pointed out the property adjoining his lot to the north was zoned and used for commercial purposes from the north line of his property to Highway 50. The property on the east side of Raytown Road across from the plaintiff's lot was likewise zoned and used for commercial purposes. The plaintiff's lot was bounded on the south by 76th Terrace and on the south side of such street was single family residences. To the west of plaintiff's lot the land was zoned for use for duplexes.

Mr. Chiles stated it was the desire of his company to construct an office building on his lot. The plaintiff's lot was square, with 120 feet along Raytown Road and 101 feet along 76th Terrace. Mr. Chiles stated he planned to build an office building containing 1340 square feet, to be used in connection with real estate sales. The City requirements for off-street parking spaces for a building of this size would require seven spaces. Immediately to the north of plaintiff's lot was a commercial building used principally for offices and north of that was another commercial building containing an insurance office, a franchise fried chicken operation and a dry cleaners, and at the intersection of Raytown Road and 50 Highway was a Safeway Store. All of these commercial structures have parking lots adjacent thereto.

At the hearing on the original application, no one else testified except Mr. Chiles. A hearing was held on the sub-

sequent application, which is the subject matter of this lawsuit, and the transcript of the first hearing was introduced but no further evidence was heard by the Commission. There were no adjoining property owners or others who appeared at either Commission hearing to testify in opposition to the applications, although it was noted there was a letter received which stated some objection.

The Commission recommended to the Board of Aldermen that the plaintiff's final application be denied. The Board of Aldermen considered an ordinance which would have rezoned plaintiff's lot, and without hearing any evidence or holding any public hearing, the Board voted on such ordinance. The result of the vote was to defeat the ordinance which meant the zoning on plaintiff's lot remained "R–2".

On appeal to the circuit court, plaintiff produced Ralph Ochsner, who was qualified as a professional city planner. Mr. Ochsner testified as to the plaintiff's lot and the surrounding territory resulting from his visit to the area. Mr. Ochsner further testified that in District "C–0", any residential use would be permitted, together with non-retail office structures. Mr. Ochsner stated the property immediately north of plaintiff's lot was zoned "C–2" which was an intensive retail-commercial zone. He further described 50 Highway as being in the expressway category, and Raytown Road as a major arterial street.

Mr. Ochsner further testified in his opinion there would be no detriment to the value of surrounding property by changing the zoning on plaintiff's tract from "R–2" to "C–0", and stated in fact he felt the commercial zoning on plaintiff's tract would stabilize and enhance the value of surrounding property. He based this statement upon his opinion that a continued "R–2" zoning on plaintiff's lot would mean a continuing effort to have it rezoned to commercial use since it was adjacent to existing commercial use, and due to the presence of a service station across Raytown Road from plaintiff's lot. He stated a commercial zoning with the construction of an office building would stabilize the value of the surrounding land without any diminution.

Mr. Ochsner further stated a non-retail commercial zoning on plaintiff's lot would be a better buffer between the high intensity commercial use to the north of plaintiff's lot and the single-family residences to the south and the duplexes to the west than would a duplex zoning. He based this opinion on the fact that he could not follow the reasoning which was implicit in a duplex zoning as being the buffer, because if it was bad for one family to live next to a commercial zone, it would not be any any better for two families to live in such location. His conclusion was that the highest and best use of plaintiff's lot would be for a commercial office building.

Joe Dittmer also testified in the circuit court. Mr. Dittmer was an officer and stockholder in the plaintiff corporation and reiterated the plans of the corporation to build an office building.

The City introduced no evidence before the circuit court, nor, as stated before, the Planning and Zoning Commission or the Board of Aldermen. The transcript of both hearings before the Commission was introduced in the circuit court hearing, together with the minutes of the Board of Aldermen at which the ordinance to rezone plaintiff's lot was defeated. The Board of Aldermen minutes did show that Richard B. Winner, City Zoning Administrator, favored the rezoning of plaintiff's property and told the Board of Aldermen he did so because of the "C–2" zoning across the street and to the north of the plaintiff's lot, and stated the "C–0" zoning of plaintiff's lot would be a continuation of the "C–2" zoning.

By rule 73.01(3) V.A.M.R., this court is required to review this court-tried case upon both the law and the evidence as in suits of an equitable nature. In R.L.S. v.

J.E.S., 522 S.W.2d 5 (Mo.App.1975) this court stated:

"The nature of review in equity cases has historically demanded that due deference be given to the findings and conclusions of the trial chancellor and that this rule of deference not be ignored 'unless the evidence is palpably insufficient to sustain the findings' ".

■ The City's first point on this appeal is that plaintiff failed to sustain its burden of proof and for that reason the judgment of the circuit court was not based upon substantial evidence. The recital of the evidence heretofore given, together with the fact there was no contrary evidence before the circuit court, gives ample answer to plaintiff's contention. There was substantial evidence to support the trial court's findings and judgment.

The City next contends the trial court simply substituted its judgment for the judgment of the Board of Aldermen of the City and this was not permitted the trial court to do. This claim of error is substantially the same as the first point which claims a lack of evidence upon which the court could base its judgment. It is already noted there was substantial evidence to support the judgment of the trial court.

In considering the City's contentions, this court is mindful of the general rules concerning zoning cases. These rules are stated in Huttig v. City of Richmond Heights, 372 S.W.2d 833 (Mo.1963).

There the court stated at 838[2]:

"A zoning ordinance may be valid generally, yet invalid in its application to a specific tract. . . . Unless it should appear that the conclusion of the city's legislative body in the respect and issue here is clearly arbitrary and unreasonable, we cannot substitute our opinion for that of the city's Board of Aldermen. . . . If the city's action in zoning the property is reasonably doubtful or even fairly debatable, we cannot do so".

The court further stated at 842[5–8]: "[e]ach such case stands on its own facts and circumstances".

Bearing all of these general principles in mind, it is still apparent the trial court came to the only conclusion which could be justified under the evidence which it had to consider. It may be additionally noted that the facts in *Huttig* are quite similar to the facts in the case at bar, and in that case the court held the action of the City in refusing to rezone was arbitrary and unreasonable. See also Ewing v. City of Springfield, 449 S.W.2d 681 (Mo. App.1970).

■ The City's final point is that the plaintiff failed to show any decrease in value of its property by reason of the failure to rezone it and, therefore, the plaintiff, having failed to show that it suffered any loss, is not entitled to any relief. The City relies upon Wheeler v. City of Berkeley, 485 S.W.2d 707 (Mo. App.1972). In *Wheeler* the court recognized that one of the factors to be considered in these cases is whether or not the retention of the present zoning classification would work a financial hardship on the owner. In *Huttig* it was stated 372 S.W.2d at page 840 that this question of financial damage is by no means decisive, although recognizing that such question is one of the several questions to be considered.

Here, plaintiff's evidence was that the highest and best use of this lot was for commercial purposes. In State National Bank v. Planning and Zoning Commission, 156 Conn. 99, 239 A.2d 528 (1968), the court stated at 530[1–4]:

"The 'highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate".

A reading of Mr. Ochsner's testimony leaves no doubt that he was using the phrase "highest and best use" with the above meaning in mind. While Mr. Ochsner did not ascribe any monetary difference in value to this tract, it is obvious his testimony shows the tract to be worth more with a commercial zoning than with a residential classification. It is not necessary that a precise amount of difference in value be shown. Ewing v. City of Springfield, supra.

The judgment is affirmed.

All concur.