Olga DESPOTIS, Plaintiff-Respondent,

v.

CITY OF SUNSET HILLS,
Defendant-Appellant.

No. 42932.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 9, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

Application to Transfer Denied
Sept. 8, 1981.

---

Robert C. Jones and Harold A. Tzinberg, Ziercher, Hocker, Tzinberg, Human & Mi-chenfelder, Clayton, for defendant-appellant.

Marvin S. Wood, Clayton, for plaintiff-respondent.

SNYDER, Judge.

The City of Sunset Hills appeals from the judgment of the trial court ordering appellant to rezone, from residential to commercial, a certain tract of land owned by respondent; enjoining enforcement of Sunset Hills' ordinance requiring residential use of the tract or prevention of respondent's commercial use of the tract; and ordering Sunset Hills to issue the necessary permits to enable respondent to use the tract for commercial purposes, upon respondent's compliance with Sunset Hills' commercial licensing requirements. In essence, Sunset Hills argues the trial court's judgment is not supported by and is contrary to the evidence. The trial court's judgment is affirmed.

The subject property is located in Sunset Hills on the west side of Lindbergh Boulevard and directly north of Court Drive which is not quite one-half mile north of Eddie and Parke Road.[1] Lindbergh is a four-lane, heavily traveled federal highway. Court Drive is a non-through street and the location of a subdivision of single-family residences. The commercial zone in Sunset Hills on the west side of Lindbergh extends south from the municipal boundary to the subject tract.

---

1. A sketch showing the relevant zoning districts abutting Lindbergh in north Sunset Hills and other pertinent features is shown on the next page.

The parties stipulated that on the east side of Lindbergh, the commercial zone extends south to a point 300 to 400 feet north of the subject property. North of the respondent's property, property on Lindbergh to Highway 66 is used for several gasoline stations, restaurants, two motels, small commercial businesses, and a large shopping center. The area south of respondent's property is undeveloped or developed residentially north of a commercial zone near Gravois Road. To the immediate south of

respondent's property, the land is vacant. Sunset Hills plans to build a new complex housing the city hall on the west side of Lindbergh approximately one-fourth mile south of respondent's property on property which is a part of a city park. The property across Lindbergh from the respondent's is vacant. To the south, across Lindbergh Boulevard is an area where plant nursery operations are conducted.

One of respondent's expert witnesses described the nursery area as a large commercial greenhouse operation which extends four to six hundred feet along Lindbergh. A parking lot with an irregular layout, a deteriorated house fronting on Lindbergh, stands and signs displaying various materials and plants for sale, a free standing chimney, and an extremely large commercial greenhouse are visible.

A witness for Sunset Hills testified the nursery operation was not one nursery but several. One nursery, the closest to respondent's property, is permitted in a residential area by special use permit. Another nursery, fronting on Eddie and Parke Road and not adjacent to Lindbergh does not have a conditional use permit and is the subject of litigation. Another nursery, fronting on Lindbergh, is no longer used; and greenhouses, but for one smokestack, have been removed.

The subject property is approximately a one-third acre tract and has been vacant since 1947 when the subdivision on Court Drive was formed. It contains 14,702 square feet and fronts approximately 160 feet on Lindbergh Boulevard. Respondent purchased the property in 1974. Respondent had acquired a second tract immediately to the north of the subject tract in 1963. The northern tract was zoned residential, and a bungalow existed on the tract when it was purchased. Upon respondent's application, the northern property was rezoned to commercial in 1973. The zoning change had been requested because respondent had been unable to rent the property to responsible tenants because of the property's location on a highly traveled road next to a service station. At the time of

the hearing in the trial court challenging Sunset Hills' refusal to rezone the southern tract, the original bungalow on the northern tract housed an antique shop.

Respondent had requested the property which is the subject of this litigation be rezoned commercial because she desired unified utilization and development of the subject property and her property to the north. Respondent proposes to erect a building with a maximum of five shops on the subject property with a parking lot on the smaller northern tract, already zoned commercial. Respondent's proposal indicates no access to the development from Court Drive and shows greenery buffers 30 feet wide along Court Drive and 15 feet wide in the rear of the development abutting a residence on Court Drive. No doors or windows in the proposed building would open onto adjacent residential property lines.

An expert real estate appraiser and broker testified for respondent at the hearing challenging Sunset Hills' refusal to rezone the subject tract. The expert had made an appraisal of the subject property for both residential and commercial purposes. He appraised the residential value of the subject tract at $7,350 in 1976 and appraised the commercial value at $29,500 in 1976. The expert estimated the current commercial value of the property would be $40,000. He opined the highest and best use of the subject property would be for commercial purposes based upon the factors that: property use along the whole of Lindbergh is 85 percent to 90 percent commercial except for an area between Eddie and Parke Road and Denny Road; traffic along Lindbergh, which circles St. Louis, is heavy; when residences abut Lindbergh, the residences usually face an intersecting street and not Lindbergh, but the longer property line of the subject tract is on Lindbergh; and to include the subject tract in the commercial zone would be a logical extension of the commercial zone. The expert did not, however, consider possible restrictions on the use of the subject tract found in the deed to the property or the objections of respondent's neighbors in appraising the property.

The expert also acknowledged that Sunset Hills has been restrictive in zoning and that the only noncommercial utilization of Lindbergh Boulevard in the south county area is in Sunset Hills. Only approximately 30 percent of Lindbergh is used commercially in Sunset Hills.

An expert architect and land use planner also testified for respondent. His impression of the land use along Lindbergh Boulevard from Highway 66 to and beyond the subject property was that of a chaotic, unregulated type of commercial use. Current zoning for the tract is for 20,000 square foot single-family residences and the subject property contains 14,702 square feet, but a residence could be built on the subject tract because it is a preexisting substandard lot. The expert would not, in his opinion, erect a residence on the property because of its location. He testified that a 1977 study showed 21,000 vehicles drive past the subject tract per day, increasing pollution, noise and traffic danger.

In the opinion of respondent's expert, the highest and best use of the subject tract would be for retail convenience shops because: the tract had easy on and off access to a main commercial street and the volume of traffic on such a street was good for commercial but bad for residential use of the property; the site was adequate for the proposed 4,000 square foot building and parking in comformance with city ordinances; the proposed building and landscape screen would form an attractive buffer between Lindbergh and the adjacent residential users; and, because of the appearance, noise and nuisance factors, residential use of the subject property was impossible.

Sunset Hills would benefit from the proposed building through increasing the number of businesses on the tax rolls, increasing property taxes perhaps $50 per year and improving the aesthetics of the area by adding an attractive building with landscaping to a chaotically developed area while eliminating the bungalow now on respondent's northern tract. Given the volume of traffic on Lindbergh Boulevard, respondent's proposal would not be a major traffic generator. Further, although residents of the neighboring subdivision opposed respondent's plan, residents on the subdivision on Court Drive should not be harmed by respondent's proposal and might find the shops convenient. Functionally, the subject tract was not part of the residential subdivision and was more related to the commercial street because of the property's linear shape along the Lindbergh frontage and because the gate to the subdivision is set back a distance from Lindbergh.

On cross-examination, the expert acknowledged the chaotic usage of property in the area could predate the incorporation of Sunset Hills.

The city engineer and public works director for Sunset Hills testified at the hearing that property along Lindbergh between commercial property south of Highway 66 and commercial property north of Gravois has been developed as single-family residential. Most houses adjacent to Lindbergh face side streets, but some houses face Lindbergh. The witness knew of three houses built farther south of respondent's property with Lindbergh frontages since 1973. The witness acknowledged that the configuration of subdivision lots was altered so that one of these residences could face a side street and that all three of the lots were larger than the subject property.

On appeal, Sunset Hills raises related contentions that: (1) the trial court exceeded its permissible scope of review in reversing the decision of the Board of Aldermen of Sunset Hills denying respondent's petition for rezoning and (2) the trial court erred in relying upon *Huttig v. City of Richmond Heights*, 372 S.W.2d 833 (Mo. 1963), in reversing the decision of the Board of Aldermen of Sunset Hills. The gravamen of Sunset Hills' complaint is that the evidence would not support the trial court's determination that the zoning ordinance of Sunset Hills was unreasonable, arbitrary, unconstitutional and void as it requires residential zoning of the subject tract. Sunset Hills cannot prevail on appeal.

■ Zoning regulation involves the competing interests of private property rights and the public interest. See *Huttig v. City of Richmond Heights, supra* at 842[5–8]; *Loomstein v. St. Louis County,* 609 S.W.2d 443, 447[2–4] (Mo.App.1980). A zoning ordinance may be valid generally, yet invalid in its application to a specific tract. *Huttig v. City of Richmond Heights, supra* at 838–839[2]; *Home Building Co. v. City of Kansas City,* 609 S.W.2d 168, 171[3–5] (Mo.App.1980). Whether application of a zoning ordinance to a particular tract is reasonable and constitutional or arbitrary and unconstitutional depends upon the facts, circumstances and the evidence in each case. *Loomstein v. St. Louis County, supra* at 446.

■ Zoning which restricts property to a use for which it is not adapted is unreasonable and constitutes an invasion of the property rights of the owner. See *Huttig v. City of Richmond Heights, supra* 841; *Home Building Co. v. City of Kansas City, supra.* Nonetheless, although arbitrary and unreasonable application of zoning ordinances is a subject for judicial inquiry, if the municipal zoning action is fairly debatable, the court cannot substitute its opinion for that of the legislative body. *Huttig v. City of Richmond Heights, supra* at 839; *Home Building Co. v. City of Kansas City, supra.*

■ Review of zoning decisions thus involves two steps. First, the court reviews the property owner's evidence to determine whether the owner has rebutted the presumption that continuation of the present zoning was reasonable; and second, the court reviews the government's evidence to determine whether such evidence makes the continuance of the present zoning fairly debatable. *Loomstein v. St. Louis County, supra.* If the public welfare is not served by the zoning or if the public interest served by the zoning is greatly outweighed by the detriment to private interests, the zoning is arbitrary and unreasonable and violative of due process required by state and federal constitutions. *Loomstein v. St. Louis County, supra* at 447[2–4].

■ Respondent's evidence proved development of her property under continued residential zoning was not economically feasible. The location of the subject property on a heavily traveled thoroughfare, the size and shape of the lot fronting on Lindbergh, the type of development of property in the immediate vicinity of the subject property on Lindbergh, and the respondent's experiences in owning the land adjacent to the subject tract amply support the opinions of respondent's two experts that the subject tract could not be feasibly developed residentially. Expert testimony also established the commercial value of the property would far exceed the residential value. Respondent's evidence rebutted the presumption that to continue residential zoning would be reasonable.

On the other hand, evidence by Sunset Hills did not demonstrate development of respondent's property under the present zoning was a fairly debatable issue. Although Sunset Hills gave evidence that three residences had been erected along Lindbergh some distance south of respondent's property since 1973, Sunset Hills gave no evidence that a residence could, as a practical matter, be built on the subject tract. The city engineer, the only witness for Sunset Hills, did not testify in any manner that to continue the residential zoning for the subject property would be reasonable. He gave no evidence at all about residential use of the subject property, pro or con.

■ The size, shape and location of respondent's lot differentiate the lot from the three examples of residential development related by Sunset Hills. Proof of the feasibility of a hypothetical development which is not related to the subject property does not make the adaptability of the subject property for the permitted use a fairly debatable issue. *Loomstein v. St. Louis County, supra* at 448–449. Further, Sunset Hills did not establish that the adaptability of the subject tract to residential use was a debatable issue by evidence that city ordinances permitted a residence on respondent's prop-

erty despite the fact the lot was a substandard lot because it was a preexisting substandard lot. The fact that ordinances would permit a residence on respondent's property does not counter respondent's evidence such a venture would not be economically feasible.

A finding that respondent demonstrated a clear detriment to her private interests by the continued residential zoning of the subject tract does not end the matter, however. The court must consider whether continued residential zoning serves a public interest which outweighs the detriment to respondent's private interest. *Loomstein v. St. Louis County, supra* at 450.

In weighing the competing public and private interests, the zoning and use of property surrounding the tract sought to be rezoned is often the critical factor. *Loomstein v. St. Louis County, supra.* Respondent's property is located at the southern edge of a commercial district which extends along a major thoroughfare to the northern boundary of Sunset Hills. The subject tract's southern property line is on a side street, a natural boundary. Property across the street from the subject tract is either vacant or used as a commercial plant nursery.

Factually, the appellate decision most akin to respondent's action is *Huttig v. City of Richmond Heights,* 372 S.W.2d 833 (Mo. 1963), which held the municipality's refusal to rezone certain residential property as commercial was arbitrary, unreasonable and impermissible. As in respondent's action, the subject tract was at the boundary of the municipality's commercial zone extending along a major thoroughfare. The property in the cited case extended almost as far as a road intersecting this major thoroughfare but for a narrow, virtually unuseable strip of land. Property use on the far side of the intersecting road was residential. Property across the major thoroughfare from the property at issue was in a different municipality but zoned commercial. The tract in *Huttig v. City of Richmond Heights, supra,* fronted 523.33 feet on the major thoroughfare whereas respondent's tract fronts only 160 feet on Lindbergh.

Sunset Hills seeks to distinguish *Huttig v. City of Richmond Heights, supra,* upon several facts. Sunset Hills argues the intersecting street which became the new boundary of the commercial district in *Huttig v. City of Richmond Heights, supra,* was a more heavily traveled street than Court Drive. This is true, but Sunset Hills offers no explanation why it would prefer to end its commercial district in mid-block rather than at Court Drive. In this regard the configuration of property in respondent's case is seemingly more like that in *Brain Trust, Inc. v. City of Raytown,* 523 S.W.2d 156 (Mo.App.1975), in which the appellate court affirmed the trial court's reversal of the municipality's denial of a zoning change.

■ Sunset Hills also argues respondent's property is part of a residential subdivision unlike the property in *Huttig v. City of Richmond Heights, supra.* Respondent's evidence established that, functionally, respondent's property was no more a part of the residential subdivision to its rear than the property in *Huttig v. City of Richmond Heights, supra,* despite the fact both the lots in the subdivision and respondent's lot once emanated from a common grantor. Finally, Sunset Hills argues the commercial property bordering the subject tract to the north was only recently rezoned commercial. This fact, although true, has no relevance. In judging whether the surrounding area is commercial, the length of time an area has been commercial has no bearing.

■ Other factors in addition to the type of development of an area may constitute a countervailing public interest. One such factor is the effect of commercial development upon other property in the area. Sunset Hills contends that it has consistently maintained restrictive zoning in the area of respondent's property. This contention does not comport with the description of property use north of the subject tract. Although Sunset Hills has suggested commercial uses of property predated the incorporation of Sunset Hills, Sunset Hills introduced no evidence of the dates the commer-

'cial property was developed, and the tract immediately north of the subject tract was rezoned to commercial relatively recently in 1973.

Sunset Hills also argues the proposed commercial development would have a deleterious effect upon respondent's residential neighbors to the rear of the subject tract who opposed respondent's proposal. Only one residence abuts the subject tract; and, given respondent's evidence, harm to the property owners in the residential subdivision to the rear of the subject tract is far from clear. In any event, a refusal to rezone based upon a desire to benefit or refrain from injuring a few adjacent land owners is not substantially related to the public interest and cannot be justified on that basis. *Huttig v. City of Richmond Heights, supra* at 842–843; *Loomstein v. St. Louis County, supra* at 450[8]. Another factor which may constitute a countervailing public interest is traffic control. Traffic control is not an operative countervailing public interest here. See *Huttig v. City of Richmond Heights, supra* at 839–840; *Loomstein v. St. Louis County, supra* at 450–451[9].

Sunset Hills has contended respondent's proposed development would not add anything to the community and would benefit only respondent. Sunset Hills hints at an estoppel argument by suggesting respondent acquired the property with knowledge of its residential zoning and in spite of the property's zoning. The court can envision few cases challenging the zoning of a parcel of land in which the owner of the land acquired the property in ignorance of the zoning classification later challenged. Here, respondent introduced evidence of the benefits to Sunset Hills and residential neighbors which would be attributable to her proposed development. Sunset Hills countered by diminishing the magnitude of the suggested public benefits to be derived from respondent's proposal, but Sunset Hills did not demonstrate the suggested public benefits were nonexistent.

After considering all the relevant evidence this court finds any public interest served by maintaining the residential zoning for the tract in question is heavily outweighed by the demonstrated detriment to the respondent's interest. Therefore, to continue the residential zoning for the tract in question would be unreasonable, arbitrary and a violation of respondent's constitutional rights. Mo.Const. Art. 1, § 10 U.S. Const. amend. XIV.

Sunset Hills argues commercial zoning in Sunset Hills must end somewhere and, in effect, Sunset Hills has the right to draw the boundaries of zoning districts where it wills. Municipalities have a great deal of discretion in determining the bounds of zoning districts. However, such power is not unbridled and is circumscribed by the requirement that zoning not be arbitrary and unreasonable. *Huttig v. City of Richmond Heights, supra* at 843. The trial court was correct in concluding the residential zoning classification applied to the subject tract was unreasonable, arbitrary and unenforceable.

The judgment is affirmed.

CRIST, P. J., and REINHARD, J., concur.