**WEST LAKE QUARRY AND MATERIAL COMPANY, et al., Respondents,**

v.

**CITY OF BRIDGETON, et al., Appellants.**

No. 54007.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 6, 1988.

Martin Paul Zucker and William A. Richter, St. Louis, for appellants.

Jay Lewis Levitch, Walter L. Wittenberg, James F. Gunn, St. Louis, for respondents.

GARY M. GAERTNER, Judge.

Appellants, the City of Bridgeton and members of the city council (hereinafter the City), appeal from judgment of the circuit court in favor of respondents, West Lake Quarry and Material Company and West Lake Landfill, Inc. (hereinafter West Lake), in action to declare City's zoning ordinance unconstitutional as applied to West Lake's property. We affirm in part and reverse in part.

West Lake owns a 184 acre tract of property (hereinafter the subject property) in northwest St. Louis County located within the City's borders. The property is currently zoned R–1 and R–3 residential under the City's zoning ordinance. West Lake filed an application to have the property rezoned to M–1 manufacturing so that West Lake could dig a quarry and carry out quarrying activities on the property. After several public hearings, the City Council denied the application by a 6–2 vote. West Lake brought an action for declaratory judgment pursuant to RSMo § 527.010 (1986) in the St. Louis County Circuit Court. The circuit court held that the City's zoning of West Lake's property was unconstitutional and void as applied to the subject property. The court then ordered the City to zone the property M–1 manufacturing. The City appeals.

The subject property is located in the City of Bridgeton, west of Foerster Road and south of Boenker Lane (formerly Old St. Charles Rock Road). The property lies to the north and west of the intersection of interstate highways 70 and 270. West Lake purchased the subject property between 1968 and 1970 at which time it was zoned R–1 and R–3 residential.[1] Immediately to the north of the subject property is West Lake's current quarry and materials operation (hereinafter the quarry or the primary site). West Lake began its original quarrying at the primary site in 1939. The quarry was recently exhausted and is currently being used as a sanitary landfill. That land is zoned M–1 manufacturing. The property north of the quarry on the north side of St. Charles Rock Road is zoned M–1 manufacturing and includes various operations of Ralston Purina, Hussman Refrigerator, Schnuck's Markets, Kirchner Brick, and Central Hardware. Property to the north of the subject property across Boenker Lane and to the east of the quarry is zoned B–4 commercial which permits office, warehouse and commercial activities. To the east of the subject property is zoned B–3 travel and entertainment services and M–3 planned manufacturing. Therein lies several office and warehouse operations including Hewlett Packard and Western Union, and two hotels.

To the north and west of the subject property lies Earth City, a commercial and industrial development recently annexed by the City.[2] St. Louis County had zoned the development C–8 and M–3. The City has proposed M–3 manufacturing for Earth City. To the south of the subject property is the "Barton" tract which is also vacant and zoned R–1 residential.[3] Also to the south of the property is the Spanish Village Subdivision which consists of 96 single-family residences. Spanish Village, zoned R–3 residential, was developed starting in 1968. Fred Weber Company operates a quarry south of I–70 and the Boise Cascade Company operates a can manufacturing plant adjacent to Weber. The site for Sverdrup Corporation's proposed Riverport commercial-industrial development lies to the west

---

1. R–1 and R–3 are single-family dwelling classifications, R–3 allows a more dense development. B–3 is a travel and entertainment services district. B–4 is a general commercial district. B–5 is a planned commercial-residential district. M–1 is a limited manufacturing district. M–3 is a planned manufacturing district.

2. The property bordering the subject property was vacant at the time of trial. The evidence at trial was not conclusive as to whether this border property is proposed for development as a part of Earth City.

3. The City presented evidence at trial that an application for R–6 residential zoning had been filed by a potential developer just prior to trial. Subsequent to trial the application was withdrawn and the property was zoned B–5 commercial. Nevertheless, we will only consider the zoning at the time of the trial court's decision, i.e. the property was zoned R–1 residential.

of Boise Cascade and Fred Weber. (See Appendix.)

The subject property is currently vacant and is being used by West Lake in conjunction with the landfill operation at the primary site. West Lake established a 7.5 acre leachate holding lagoon on the subject property which is used for the purpose of temporarily collecting and settling water that has seeped through the landfill. West Lake also conducts a "borrowing" operation whereby West Lake grades soil from the subject property and places it over the waste deposited in the exhausted quarry pursuant to Missouri Department of Natural Resources regulations. West Lake obtained a special use permit from the City in order to conduct the borrowing operation.

The trial court concluded that residential development pursuant to R–1 and R–3 zoning is not economically feasible and that the subject property is unadaptable for use under its current zoning. The court found that the proposed quarry would not adversely affect the values of surrounding property including Spanish Village, nor would the quarry have any substantially new or different impact upon nearby properties. The court concluded that the detriment to the interests of West Lake far outweighed the public interest in the continued R–1 and R–3 zoning of the subject property. The court also found that because of poor access, high development costs, the necessity of continuing the leachate lagoon and borrowing activities, and the availability of more attractive commercial property elsewhere, the property is not currently adaptable for any industrial or commercial use other than a quarry. The court concluded that the only reasonable zoning classification is one that would permit the operation of a quarry, i.e. the M–1 zoning classification. The court further concluded that the continuation of the residential zoning is not fairly debatable. The court held that the R–1 and R–3 zoning is arbitrary and unreasonable and ordered the City to rezone the subject property to the M–1 classification.

On appeal the City argues that the trial court erred in declaring the R–1 and R–3 residential zoning of the land unreasonable and unconstitutional. The City asserts that the evidence produced at trial demonstrated that the residential zoning was at least fairly debatable and thus constitutional.

In determining whether a zoning ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional in its application to a specific property, we look to the evidence and the facts and circumstances of each case. *Vatterott v. City of Florissant*, 462 S.W.2d 711, 713 (Mo.1971). A zoning ordinance is presumed valid, and the challenger of the ordinance has the burden of proving unreasonableness. *Id.* The reviewing court cannot substitute its opinion for that of the city council if the current zoning is fairly debatable. *Huttig v. City of Richmond Heights*, 372 S.W.2d 833, 839 (Mo.1963). But where a zoning ordinance restricts property to a use for which it is not adapted, such an ordinance invades the rights of the property owner and is unreasonable. *Despotis v. City of Sunset Hills*, 619 S.W.2d 814, 821 (Mo.App., E.D.1981). In reviewing the validity of an ordinance the court must weigh the detriment to the private interest against the benefit to the general public. *Loomstein v. St. Louis County*, 609 S.W.2d 443, 447 (Mo.App., E.D.1980). To balance the competing public and private interests, the court should consider various factors. *Id.* In considering the detriment to the owner's property, we determine the adaptability of the property for the permitted use and look to the effect of the zoning on the value of the property. *Id.* Further, the zoning and use of the property surrounding the subject property is a critical consideration. *Despotis*, 619 S.W.2d at 821. The reviewing court must also consider the effect that removal of the current zoning would have on other property in the area. *Loomstein*, 609 S.W.2d at 450.

Both West Lake and the City presented evidence regarding the adaptability of the property for residential use. Several expert witnesses testified on behalf of West Lake as to the feasibility of residential development of the subject property. Carl

Leuker, an engineering and surveying consultant, testified that preparing the property for houses to be built, *i.e.* grading, installing sewers, streets, and utilities, would cost approximately ten percent more than developers were paying to develop comparable subdivisions. Leuker concluded that single-family residential development would not be successful because of increased development costs, surrounding commercial-industrial development, proximity to I–70, and noise from airplanes. Leuker testified based upon a 396 single-family home site plan prepared by his consulting firm. Patrick Kelly, vice-president of a major homebuilder, testified that the costs of acquiring, developing, building, financing and advertising would result in a selling price far exceeding the selling price of the existing Spanish Village homes. He concluded that the relative price of the proposed homes, poor access, the nearby highways and the surrounding commercial-industrial uses rendered residential development economically infeasible. Tom McReynolds, a real estate appraiser, testified that the commercial-industrial character of the surrounding land and the poor access to the property would prevent development under current zoning. He concluded that the subject property is "marginal" land which is totally inappropriate for residential development and would not be developed commercially for many years in view of more attractive sites in the area.

John Baggs, former director of St. Louis County's planning department, testified on behalf of the City regarding a plan for residential development of the subject property. The plan provided for 260 single-family homes and a small amount of multi-family housing. The plan also called for later commercial development at the northern section of the subject property. Baggs also referred to a comprehensive land use plan prepared for Bridgeton in 1978 by Harland Bartholomew and Associates which recommended residential development of the property. Keith Kramer, an appraiser and financial analyst, testified regarding Baggs' site plan. Kramer's analysis concluded that the proposed development could return a $1.6 million profit for

West Lake. Kramer also testified that Leuker's site plan might be economically feasible if several premises underlying the cost analysis were varied, such as interest rates and costs of acquiring the land. West Lake disputed several of the assumptions underlying Kramer's analysis of the Leuker and Baggs site plans.

Concerning the effect of the current zoning on the value of the subject property, West Lake points to the evidence which revealed that $64 million in limestone lies beneath the surface of 23 acre proposed quarry. West Lake is unable to access those reserves under the current zoning. West Lake also refers to the above-mentioned evidence illustrating the economic infeasibility of residential development in arguing that the property is of little value as currently zoned. The City asserts that their evidence showed the property could be developed residentially and therefore was of great value as zoned. The City also points to the settling lagoon and borrowing operation as essential to West Lake's landfill operation, demonstrating that West Lake is able to make use of the property as currently zoned.

The surrounding property, also detailed above, is clearly of a commercial-industrial nature except for the Spanish Village subdivision. Richard Ward, a planning consultant, referred to Spanish Village as a residential island surrounded by commercial-industrial development and highways. Robert Little, the City's planning and zoning officer, acknowledged at trial that he previously stated in a letter to the City's planning and zoning commission that Spanish Village was a mistake.

As to the detrimental effect of removing the residential zoning of the subject property on the surrounding property, Spanish Village is clearly the only property which could be adversely effected. West Lake's expert McReynolds testified that the proposed quarry would have a negligible effect on the property values in Spanish Village. The City argues that the property values of Spanish Village would be adversely affected by the quarry. The City also argues that after fifteen or twenty

years of quarrying, twenty-three acres of economically valuable property will be rendered forever useless.

■ After consideration of the operative factors of this case pursuant to the principles set forth in our past cases and those of our supreme court, we conclude that the trial court correctly ruled that the zoning ordinance was unreasonable, arbitrary and unconstitutional as applied to the subject property. The evidence regarding the adaptability of the property for development under its current zoning showed that residential development, although theoretically possible, is not economically feasible. The mere existence of a difference in expert opinions does not render the matter legally debatable. *Huttig*, 372 S.W.2d at 842. The effect of a change in zoning on the surrounding property would be limited because of the commercial and industrial nature of the area. Clearly the detriment is limited to the adverse effect on Spanish Village. But as has been stated before, "They, alone, do not constitute the *public*, and their collective interests are not that 'public interest' which must be weighed in any such zoning problem." *Id.* at 843. Finally, the continuation of residential zoning would severely impact the value of the subject property, limiting West Lake's use to the small percentage utilized for the settling lagoon and borrowing operations. The first point is denied.

■ The City next argues that the trial court exceeded its jurisdiction in ordering the City to rezone the subject property to the M-1 classification. We agree. It is not the function of the courts to prescribe what commercial use shall be permitted on particular property. *Huttig*, 372 S.W.2d at 844; *Loomstein*, 609 S.W.2d at 452. Rather the court's determination is limited to the reasonableness of the current zoning. *Id.* The court can only require the City to place a reasonable zoning classification on the property. *Loomstein*, 609 S.W.2d at 452.

West Lake points to the case of *Brain Trust, Inc. v. City of Raytown*, 523 S.W.2d

156 (Mo.App, K.C.D.1975). In *Brain Trust*, the Kansas City Court of Appeals affirmed the judgment of the trial court which had ordered the city to rezone the subject property from R-2 to C-0. *Id.* at 157. However, in *Home Building Co. v. City of Kansas City*, 666 S.W.2d 816 (Mo. App., W.D.1984), the Western District ignored *Brain Trust* and adopted the Eastern District's approach in *Loomstein* by refraining from ordering the trial court to rezone. *Id.* at 821. We decline to follow *Brain Trust* but rather follow *Huttig*, *Loomstein*, and *Home Building*, the more recent Western District opinion. The trial court is limited to ordering the City to place a reasonable zoning classification on the property.

In its third point on appeal the City argues that the trial court erred as a matter of law in ruling that the City was estopped from enforcing its zoning ordinance as to the subject property. As set forth above, the ordinance is unconstitutional as applied to the subject property. We will nevertheless address this point as the trial court's ruling may affect future proceedings.

From 1981 through 1985 the City issued a permit to allow West Lake to conduct grading on the subject property as a part of its borrowing operation. In 1986 the City engineer denied West Lake's application for the grading permit.[4] West Lake appealed the decision to the Board of Adjustment which granted a variance from the ordinance in order to allow the issuance of the grading permit. The trial court ruled that because the City had authorized West Lake to conduct the grading, a business or commercial activity, the City is estopped from denying West Lake's application to rezone the property.

■ In 1986 the Missouri Supreme Court placed Missouri law regarding use variances in line with most other jurisdictions. *See Matthew v. Smith*, 707 S.W.2d 411, 414 (Mo. banc 1986). *Matthew* held that under the proper circumstances a board of adjustment may grant a use vari-

---

**4.** Apparently the City incorrectly issued the permits from 1981 through 1985 in that grading is

only permitted under R-3 zoning if it is incidental to the establishment of a permitted use.

ance. *Id.* West Lake argues that the granting of a use variance estops the enforcement of the zoning ordinance. But the City is only estopped from enforcing the ordinance insofar as the ordinance prohibits the use for which the variance was granted. To hold otherwise would allow a board of adjustment to amend a zoning ordinance.

Further, estoppel will only operate against a city in matters pertaining to exercise of governmental functions in exceptional cases. *Murrell v. Wolff,* 408 S.W.2d 842, 851 (Mo.1966). In the case before us, the City simply granted West Lake a variance to allow a use that was not permitted under the zoning ordinance. There are no exceptional circumstances requiring the operation of estoppel. We therefore hold that the trial court erred as a matter of law in ruling that the City is estopped from denying West Lake's application for rezoning.

In its final point, the City asserts that it was entitled to a jury trial pursuant to RSMo § 527.090 (1986). Section 527.090 provides for a jury trial in declaratory judgment actions involving the determination of issues of fact in the same manner as issues of fact are tried and determined in other civil actions. The City's pretrial jury demand was denied.

The City acknowledges that no right to a jury trial exists in a case in equity. *State ex rel. Willman v. Sloan,* 574 S.W.2d 421, 422 (Mo. banc 1978). Therefore, the dispositive determination is whether the case is tried at law or in equity. *Id.* The relief sought by West Lake in its declaratory judgment action included a declaration that the ordinance is void as applied to the subject property, an injunction prohibiting the City from enforcing the ordinance, and an injunction ordering the City to rezone the property. Clearly the injunctions sought by West Lake constitute equitable relief. Although the injunction to prohibit enforcement of the void ordinance was unnecessary and the injunction ordering the City to rezone is invalid, the trial court still retains equitable jurisdiction upon remand to enjoin the City to place a reasonable zoning classification on the subject property. For, equity retains jurisdiction over a matter once it acquires jurisdiction in order to provide full relief. *Id.* The facts relied on to sustain equity jurisdiction did not fail of establishment as urged by the City. *See id.* at 423. We conclude that the city was not entitled to a jury trial. Point denied.

The trial court's order is affirmed in part and reversed in part. We remand with directions to enter an order not inconsistent with this opinion.

GRIMM, P.J., and KAROHL, J., concur.

APPENDIX

West Lake Materials And Landfill

M-1

ROLSTON PURINA

HUSSMAN REFRIGERATOR

EARTH CITY

EARTH CITY EXPRESSWAY

ST CHARLES ROCK ROAD

M-1

M-1

R-1

BOSHER LANE

LANDFILL

B-4

PROPOSED M-3

LAGOON

PROPOSED QUARRY

R-3

R-3

B-3

RED ROOF INN

SUBJECT PROPERTY

PARK

R-3

FEERTER ROAD

HOLIDAY INN

BARTON TRACT

SPANISH VILLAGE

M-3

PROPOSED SITE FOR RIVERPORT

BOISE CASCADE

R-1

HEWLETT PACKARD

I-70

WESTERN UNION

I-270

DEPAUL HOSPITAL

WEBER QUARRY

MEB

WEST LAKE PROPERTIES

NOT DRAWN TO SCALE