**Jimmy H. ELAM, et al., Plaintiffs/Respondents,**

**v.**

**CITY OF ST. ANN, Defendant/Appellant.**

**No. 55609.**

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 30, 1990.

Shulamith Simon, St. Louis, for defendant/appellant.

Robert J. Koster, St. Louis, for plaintiffs/respondents.

SATZ, Presiding Judge.

This is a declaratory judgment action in which plaintiffs, Dr. Jimmy H. Elam and his wife, challenge the reasonableness of the residential zoning of their property located at 10446 St. Charles Rock Road (Rock Road) in defendant City of St. Ann (City). The trial court held the residential zoning was unconstitutionally unreasonable in violation of the due process clauses of the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Missouri Constitution. The court ordered the City to rezone the property to a commercial classification. We reverse.

The area in question is shown in the following schematic diagram taken from the City's Exhibit O and not drawn to scale.

Library
Commercial
St. Joachim
Industrial Drive
Vatterott Educational Centre
B & B Home Supply
St. Ann's Square Shopping Center
National Foods
Elwer
City Hall
San Jose
Residential
6/24/87
San Carlos
St. Charles Rock Road
International Plaza
Post Office
Barclay College
Home for Retarded
State Unemp. Building
St. Ann Community Center
Dr. Elam
Burger King
St. Roberts
St. Monica
Shoney's Rest.
Xavier Lounge
Lazara Sons
Sew-Vac Center
G.F.C. Loans
Radio Shack
Music Vision
Payless Shoes
Ashby Road
N
E
S
W
R: Residential

Dr. Elam has practiced optometry at the Rock Road address since he and his wife purchased the property in 1981. That year, the Elams and the owners of the three other residentially zoned lots on their block sought to have all four parcels rezoned commercial. The City denied the request for rezoning and brought suit to enjoin the Elams from continuing to use their property for Dr. Elam's office. The trial court denied the City's request for an injunction and dismissed the City's petition on the grounds the City had not exhausted its administrative remedies. The court also stated the zoning ordinance the Elams were accused of violating deprived optometrists of the equal protection of the laws guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 2 of the Missouri Constitution. It is questionable whether the Elams made a due process challenge to the reasonableness of their property's zoning at that time. They made no claim the residential zoning restriction constituted a taking of the property without just compensation in violation of the Fifth Amendment to the U.S. Constitution and Article 1, Section 26 of the Missouri Constitution.[1]

This Court reversed the trial court's dismissal of the City's petition, found the ordinance did not violate the Elams' equal protection rights and remanded the cause for further proceedings. *City of St. Ann v. Elam,* 661 S.W.2d 632 (Mo.App.1983). On remand, the parties stipulated to the facts presented in their briefs to this Court and raised no new issues in their pleadings. Specifically, the Elams again did not challenge the reasonableness of the zoning ordinance on due process grounds nor did they claim the ordinance constituted a taking of their property. In November, 1985, the trial court "adopted" this Court's opinion as its own and entered judgment for the City. The Elams did not appeal this judgment.

The City subsequently refused the Elams' petition for a special use permit and also refused their second request for rezoning. The Elams then instituted this declaratory judgment action, attacking the reasonableness of zoning their property residential under the due process clauses of the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Missouri Constitution and alleging this zoning constituted a taking of their property without just compensation in violation of the "taking" clauses of the Fourteenth Amendment and Article 1, Section 26 of the Missouri Constitution.[2] The trial court held the residential zoning of the Elams' property violated their due process rights under both the U.S. and Missouri Constitutions.

On appeal, the City argues that two principles bar the Elams from challenging the reasonableness of their property's zoning: (1) failure to file a compulsory counterclaim, Rule 55.32(a) and (2) res judicata.

The concepts of res judicata, or claim preclusion, and compulsory counterclaim are neither identical nor mutually exclusive. In fact, they overlap to the extent that one commentator refers to the compulsory counterclaim as a form of "claim preclusion by rule". Vestal, *Res Judicata/Preclusion,* 131 (1969). Since the doctrine of res judicata is completely

**1.** The prolix constitutional defenses raised by the Elams appeared to challenge the reasonableness of excluding optometrists from the definition of "physicians," who were allowed to operate offices under the zoning applicable to the Elams' property. The Elams alleged the zoning violated the privileges and immunities clauses of the U.S. Constitution (Article IV, Section 2) and the Missouri Constitution (Article 1, Section 13), the Equal Protection clause of the Fourteenth Amendment, U.S. Constitution, and the equal rights and opportunities clause of the Missouri Constitution (Article 1, Section 2). Similarly, the Elams alleged that the ordinance's definition of the term "physician" was "unreasonable, arbitrary, discriminatory and oppressive in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and ... thereby deprived [the Elams] of ... liberty and property interests without due process of law." This self-styled "due process" challenge appears to have been merely a reiteration of the Elams' equal protection claim, and not a challenge to the reasonableness of the zoning.

The Elams' counsel in the present action was not their counsel in this prior action.

**2.** In their prayer, the Elams did not expressly request money compensation.

dispositive of the "due process" reasonableness issue presented here, we need not engage in a separate compulsory counterclaim analysis.

Res judicata "precludes the same parties ... from relitigating the same cause of action." *American Polled Hereford Assoc. v. City of Kansas City,* 626 S.W.2d 237, 241 (Mo.1982). A former judgment operates as a bar "not only as to all matters which were raised, but also as to all defenses which could have been raised." *U.S. v. Lufcy,* 329 Mo. 1224, 49 S.W.2d 8, 14 (1932). In the City's prior suit, in which the City sought to enjoin the Elams from operating an optometry office at the Rock Road address, the Elams could have challenged the reasonableness of their property's residential zoning either by an affirmative defense or by a counterclaim for a declaratory judgment. The reasonableness of the residential zoning thus became res judicata in November of 1985, when, on remand, the trial court issued the injunction requested by the City.

However, res judicata " 'extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of litigants.' " *City of Hardin v. Norborne Land Drainage Dist.,* 360 Mo. 1112, 232 S.W.2d 921, 925 (1950). Thus, the Elams are precluded from contesting the reasonableness of their property's zoning based exclusively on facts which existed in November, 1985. These facts include: 1) a commercially zoned lot immediately west of the Elam's property, on which a fast food restaurant, Burger King, is located; 2) noise and debris from the fast food restaurant, as well as the glare of car lights which shine on the Elam's building as cars pass through the restaurant's drive-through window; 3) gas fumes and traffic noise from the Rock Road, an arterial thoroughfare.[3] We must, however, consider the Elams' current claim on its merits to the extent that facts relevant to the reasonableness of their property's zoning changed between November 1985, the date of the former trial, and the date of the trial below, July, 1988.

The basis for requiring zoning to be reasonable and the criteria for determining the zoning's reasonableness are well known. The due process clauses of both the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 10 of the Missouri Constitution, require zoning to bear a substantial relationship to health, safety, morals or the public welfare. *Flora Realty & Investment Co. v. City of Ladue,* 362 Mo. 1025, 246 S.W.2d 771, 778 (banc 1952), *appeal dismissed* in 344 U.S. 802, 73 S.Ct. 41, 97 L.Ed. 626 (1952). The constitutional standard is essentially one of reasonableness. *Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.1971).

█ Zoning may be unreasonable on its face or as applied to a particular tract of land. In Missouri, to determine whether the zoning is reasonably related to achieving some legitimate purpose as applied to a particular tract of land, we not only determine whether application of the zoning is substantially related to the alleged purpose of the zoning, but we also consider the private detriment caused by the application. *See Huttig v. City of Richmond Heights,* 372 S.W.2d 833 (Mo.1963) and *Loomstein v. St. Louis County,* 609 S.W.2d 443 (Mo.App.1980). Thus, in Missouri, even when zoning does substantially relate to the public welfare, the zoning may be considered unconstitutionally unreasonable if its demonstrated detriment to pri-

3. The St. Louis Metropolitan area traffic map offered by the Elams showed that at the intersection of Ashby Road and the Rock Road, the intersection nearest the Elams at which a traffic count was taken, the "estimated average daily two-way traffic volumes excluding weekends and holidays for the period from July 1, 1985 thru. June 30, 1986" was 29,310. The state traffic map presented by the City does not indicate any count for that intersection. According to William Anderson, the City's Building Commissioner, the state map does show that traffic at the intersection of Woodson Road and the Rock Road, evidently the intersection nearest the Elams' for which a 1987 count was taken, had actually declined slightly from the 1985–86 levels.

vate interests outweighs the public benefit from retaining it. *See Huttig,* 372 S.W.2d at 842.

Since zoning and refusal to rezone are legislative acts, *Erigan Co. v. Town of Grantwood Village,* 632 S.W.2d 495, 496 (Mo.App.1982), we review de novo any challenges to their validity. *Clarkson Valley Estates v. Village of Clarkson Valley,* 630 S.W.2d 151, 153, n. 1 (Mo.App.1982); *see generally City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 605 (Mo. banc 1983) and *Binger v. City of Independence,* 588 S.W.2d 481, 486 (Mo. banc 1979). Zoning ordinances are presumed to be valid. This presumption is rebuttable, and the challenger bears the burden of proving an ordinance's unreasonableness as applied to his property. *Vatterott, supra,* 462 S.W.2d at 713.

Any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor: if the issue is at least fairly debatable, the reviewing court may not substitute its opinion for that of the zoning authority which enacted the challenged ordinance. *Vatterott, supra,* 462 S.W.2d at 713.[4] The analytical framework for reviewing zoning decisions is well settled:

> First, the court reviews the property owner's evidence to determine whether the owner has rebutted the presumption that continuation of the present zoning was reasonable; and second, the court reviews the government's evidence to determine whether such evidence makes the continuance of the present zoning fairly debatable.
>
> *Despotis v. City of Sunset Hills,* 619 S.W.2d 814, 820. (Mo.App.1981).

In the present case, the Elams must overcome not only the presumption of the residential zoning's reasonableness, but also the preclusion effect of the earlier judgment for the City. The November, 1985, judgment enjoining the Elams from using their property for commercial purposes means, in law, that the residential zoning was at least fairly debatable at the time that judgment was rendered. We must therefore accept that the residential zoning did substantially promote the public welfare and that the public benefit which the zoning generated was not outweighed by any private detriment which the zoning imposed as of November, 1985. In order to avoid the preclusive effect of the previous judgment, the Elams must prove either that private detriment has increased or that public benefit has decreased since November of 1985.

The Elams argue that several developments which occurred after the 1985 judgment for the City have caused their property's zoning to become unreasonable since 1985. These developments include 1) the intensified commercialization of neighboring property, including a) the conversion of the property directly opposite the Elams' lot on the north side of the Rock Road from a drive-in theater to a shopping center, b) the conversion of another drive-in theater, located three to four blocks west of the Elams' property on the south side of the Rock Road to a shopping center, and c) the expansion of a shopping center five blocks west of the Elams' lot on the north side of the Rock Road; 2) the widening of the Rock Road, which eliminated the former road shoulder, thus bringing traffic 12 feet closer to the Elams' building and complicating access to and egress from their property; and 3) the installation of a traffic light just east of the Elams' lot at the intersection of the Rock Road and San Carlos Lane. We disagree that these developments have significantly altered either the private detriment or the public benefit attributable to the zoning of the Elams' property.

Factors which show private detriment include the adaptability of the subject property to its zoned use and the effect of zoning on property value. *Loomstein, supra,* 609

4. As observed in the context of challenges to the constitutionality of proposed annexations, "the so-called 'debatable' rule merely means that if there is substantial evidence both ways [i.e., substantial evidence of both reasonableness and unreasonableness], then the legislative conclusion is determinative." *City of Olivette v. Graeler,* 369 S.W.2d 85, 96 (Mo.1963), *overruled on other grounds in City of Town & Country, supra,* 657 S.W.2d at 606.

S.W.2d at 447. These factors are obviously related. Although private detriment does not necessarily occur "just because land will bring a higher price if used commercially rather than residentially," *Tealin Co. v. City of Ladue,* 541 S.W.2d 544, 549 (Mo. banc 1976), there can arguably be no private detriment in the absence of a demonstrated negative impact on property value. As long as zoning has not adversely affected property value, owners dissatisfied with the zoning may simply recoup their investment on the open market. Therefore, in decisions holding zoning unreasonable, the value of the subject property has regularly reflected the property's unadaptability to its zoned use. E.g. *Huttig, supra,* 372 S.W.2d at 840; *Loomstein, supra,* 609 S.W.2d at 449; *Herman Glick Realty Co. v. St. Louis County,* 545 S.W.2d 320 (Mo. App.1977).

The Elams have presented no evidence showing that zoning has had any effect on their property value since 1985. The Elams purchased the property for $45,000 in 1981 and had it appraised in 1988 at $47,200 for residential purposes and at $72,000 for commercial purposes. There is no indication of the property's residential or commercial value as of 1985, much less any evidence that zoning has adversely affected the property's residential value since that time, either absolutely or relative to its commercial worth. The mere disparity between the property's appraised 1988 value for residential and commercial purposes does not prove any increase in private detriment, since there is no proof that the disparity resulted from any changes since November, 1985; indeed, similar or even greater disparity may have existed at the time of the earlier judgment for the City. While factors such as the intensified commercial uses of surrounding property and the widening of the Rock Road may have caused the Elams' tract to become less adaptable to its zoned residential use, they are insufficient to prove any increase in private detriment in the absence of proof that zoning has negatively affected the property's value since 1985.

Nor have post–1985 developments significantly diminished the public benefit generated by the zoning of the Elams' property. Factors indicative of public benefit, which may justify a zoning regulation in spite of the private detriment which it imposes, include the character of the neighborhood, the zoning and the uses of nearby property and the detrimental effect that a change in zoning would have on other property in the area. *West Lake Quarry & Material Co. v. City of Bridgeton,* 761 S.W.2d 749, 751 (Mo.App.1988). The zoning of the subject property must be "congruent with [and] ... fit comfortably within" the zoning and use of surrounding property. *Loomstein, supra,* 609 S.W.2d at 450. When, as here, the subject property is located on a boundary between a residential district and a less restricted district, the inquiry must be whether the property takes its character from the residential district or from the less restricted district.

The Elams' lot may fit somewhat less comfortably into their neighborhood as a result of the intensified commercialization of nearby property, which presumably necessitated the widening of the Rock Rock and installation of a new traffic signal. However, the property still takes it character from the residential areas to its east and south to roughly the same extent as it did in 1985. There is still a total of ten residentially developed City lots on the Rock Road, including the Elams'. The Elams' lot is still part of a larger residential area, the City's St. Joseph's Hills Subdivision.

Furthermore, a change in the zoning of the Elams' property would have much the same effect as in 1985. The Elams' residentially zoned lot continues to provide a buffer for homes located directly to the east and to the south. Although Gary Crabtree, the Elams' land planning expert, testified that the residential zoning of the Elams' property is unnecessary to provide an effective buffer, there is no indication that developments since 1985 have made residential zoning any less necessary than it was in 1985.

Since the zoning of the Elams' property continues to serve the public welfare nearly as effectively as it did at the time of the

previous judgment in November, 1985, and the Elams have shown no changes creating increased private detriment since that time, the Elams have failed to overcome the presumption that their property's zoning is reasonable.

In addition to challenging their property's residential zoning on due process grounds, the Elams, in their petition, also alleged that the zoning constituted a taking requiring just compensation under both the Fifth Amendment to the U.S. Constitution and Article 1, Section 26, of the Missouri Constitution. Having found the zoning violative of due process, the trial court did not reach the issue of whether the zoning, if constitutional, would have amounted to a compensable taking. Nor was this issue briefed or raised on appeal. However, since the Elams had a full opportunity to litigate all matters raised in their petition, we can dispose of the taking issue on the record before us.

Under the doctrine of inverse condemnation [5], an otherwise constitutional zoning law may, as applied to a particular tract, effect a compensable taking. *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 112 (1980). However, we have found no instance in which the application of a zoning ordinance has been found to require compensation in Missouri. *See Marvin E. Nieberg Real Estate Co. v. St. Louis County,* 488 S.W.2d 626 (Mo.1973) and *D & R Pipeline Const. Co. v. Greene County,* 630 S.W.2d 236, 237 (Mo.App.1982). Moreover, we understand our Southern District colleagues' skepticism whether inverse condemnation may ever result from the application of a Missouri zoning law. *D & R Pipeline Const. Co.,* 630 S.W.2d at 237. Cities have no authority to take any property under unconstitutional zoning laws. It is difficult to imagine how a zoning ordinance which complies with Missouri's interpretation of substantive due process requirements could nonetheless amount to a taking.

In Missouri, we evidently require that zoning laws provide more than the minimum amount of constitutionally mandated substantive due process. Federal and most state courts hold that zoning laws satisfy due process by being substantially related to the public welfare, regardless of any private detriment which they may impose. Rathkopf, *The Law of Zoning and Planning,* § 6.03, p. 6–12 (1989). As previously indicated, however, Missouri is among a minority of states which hold that zoning laws which do promote the public welfare fail to provide due process if the private detriment which they impose outweighs the public benefit which they generate. *See Huttig, supra,* 372 S.W.2d at 842; Rathkopf at § 6.03, p. 6–17 n. 23.

Our analysis of due process challenges to the validity of applied zoning ordinances is virtually indistinguishable from the evaluation of constitutional taking claims. Analysis under the taking clause also "requires a weighing of private and public interests." *Agins, supra,* 100 S.Ct. at 2141. This balancing test takes into account the same type of factors considered in our due process analysis. *See* Rathkopf, § 6.07, p. 6–35.[6]

Even if we assume, as the Southern District did in *D & R Pipeline Const. Co., supra,* 630 S.W.2d at 237, that in Missouri "inverse condemnation may sometimes be a proper remedy where zoning ordinances limit or prohibit the use of property," there

5. "While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the ... doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 316, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250, 265 (1987).

6. Rathkopf cites the following factors as relevant in taking analysis:

(1) the nature of the owner's legitimate investment backed expectations in regard to the subject property; (2) the presently existing use of the subject property; (3) the character of the neighborhood, the zoning, and the use of properties nearby; (4) the suitability and economic viability of the uses to which the subject property is restricted; (5) the length of time since structures of the type permitted by the restriction have been built in the area; (6) benefits, such as transfer development rights, conferred on the owner by regulation.

is no basis for finding inverse condemnation in this case. Although "diminution in property value, standing alone, [does not] establish a 'taking'" *Pennsylvania Central Transportation Co. v. City of New York,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631, 653 (1978), proof of such an effect on property value is clearly indispensable to a taking claim. Accordingly, our Supreme Court has held that inverse condemnation claims require proof of "'an invasion or an appropriation of some valuable property right which the land owner has to the legal and proper use of his property, which invasion or appropriation must directly and specially affect the land owner to his injury.'" *Marvin E. Nieberg Real Estate Co., supra,* 488 S.W.2d at 629 (Mo.1973). Since there is no absolute right to have property zoned for its most valuable commercial use, zoning does not constitute a compensable taking merely because it prohibits such use. *Id.* at 631. Similarly, Rathkopf notes that

> ... a zoning ... will not be held confiscatory [i.e. a taking] simply because [it] prohibits the most profitable use of the property or results in a substantial diminution in market value. As a general rule, regulation will be held confiscatory only where it deprives an owner of every use to which the property is reasonably adapted or, put another way, regulation is likely to be held confiscatory when it denies an owner all reasonably beneficial and economically viable use of the property.
>
> Rathkopf, *supra,* § 6.07, p. 6–28.

Regardless of the preclusive effect of the prior judgment, the Elams have failed to prove that their property's zoning has ever deprived them of any valuable property right. As previously indicated, the Elams have failed to show that residential zoning has had any negative effect on their property's value, either before or after the 1985 judgment for the City. The record merely indicates that the Elams purchased the property for $45,000 in 1981 and had it appraised in 1988 at $47,200 for residential purposes and at $72,000 for commercial purposes. Neither the disparity between their property's value for residential and commercial purposes nor the slight appreciation of their property's value for residential use entitles the Elams to any compensation for the residential zoning of their property.

Furthermore, when the Elams purchased their property in 1981, it was zoned residential. The Elams, thus, cannot forcefully argue that this residential zoning frustrates a legitimate investment backed expectation.

Judgment reversed.

SMITH and GRIMM, JJ., concur.