Bonnie H. RHEIN, et al.,
Respondents/Cross–Appellants,

v.

CITY OF FRONTENAC, et al.,
Appellants/Cross–Respondents.

Nos. 58345, 58376.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 2, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 7, 1991.

Application to Transfer Denied
June 11, 1991.

Steven Milton Hamburg, Theresa Counts Burke, Summers, Compton, Wells & Hamburg, P.C., St. Louis, for appellants/cross-respondents.

Steven W. Koslovsky, Ziercher & Hocker, P.C., Clayton, for respondents/cross-appellants.

SMITH, Presiding Judge.

City of Frontenac appeals from a declaratory judgment holding that a residential zoning classification applied to plaintiffs' property is unreasonable and from the court order requiring rezoning to an appropriate classification.[1] We affirm.

The property involved is Block 18 of the West End Park subdivision. Attached is a rough sketch of the area involved. Block 18 lies between German Boulevard, Leela Avenue, Cable Avenue, and Dwyer Avenue. German Avenue is actually two separate two way streets separated by a parkway. Immediately across from Block 18 to the south and for the entire length of German and South German Boulevard the area is zoned commercial and has been developed with commercial establishments. Immediately to the east of Block 18 is Old Frontenac Square, a commercial development located in a commercially zoned area. One block to the east of Block 18 is Highway 67 (Lindbergh Boulevard) a heavily traveled road. The entire eastern boundary of West End Park subdivision bordering Lindbergh is zoned commercial. Immediately to the west of Block 18 is the Frontenac Racquet Club, which is the largest building in the area. It is located in an area zoned residential and operates under a conditional use permit issued by the city.

---

1. Plaintiffs have cross-appealed from an order of the trial court involving an ordinance which would affect the subject property. In view of our holding herein that appeal is rendered moot.

There are additional residentially zoned areas adjoining the commercially zoned areas bordering Lindbergh south of German Boulevard which are utilized for commercial purposes under conditional use permits issued by the city. These areas are used predominately for parking or storage by commercial enterprises bordering Lindbergh.

Block 18 contains four residences and three vacant lots. Plaintiffs are the owners of the property in Block 18. Most of the residences front on Cable Avenue but at least one utilizes a German Boulevard address. Which street it fronts on is unclear from the record. All the lots run from Cable to German. One of the plaintiffs testified to the difficulty she has entering her parking area from German Boulevard because of traffic generated by the racquet club and Old Frontenac Square. Overflow parking from the Square is common on Cable Avenue to the point that the city has erected signs restricting parking to residential use only. Because of the median on Lindbergh Boulevard traffic from the residences north of German Boulevard which intend to turn left onto Lindbergh usually enter Lindbergh from German Boulevard. This also increases the traffic flow on German Boulevard.

The city's expert on land planning opined that the racquet club was a residential use. We think it more accurate to say that the club, as a recreational facility, is not an inappropriate use in a residential area. It bears no resemblance, however, to a residence. It is a very large brick building with few or no windows visible to the residences surrounding it. It contains a bar and pro shop. Membership is not restricted to residents of the area but is open to the public generally. It functions late into the night and generates considerable traffic on German Boulevard. The trial court made clear during the trial that it regarded the racquet club as a commercial enterprise. That is a reasonable finding. Block 18 is therefore surrounded on three sides by commercial development and adjoins a busy street utilized extensively by customers of commercial enterprises.

In 1985 the city commissioned Team Four Research to study the problem of traffic congestion and conflicting land uses in the West End Park area. Its recommendations included rezoning, traffic rerouting and addition of landscape buffers. It also proposed rezoning of Block 18 from R–2 residential to Planned Commercial District—a classification not included in the Frontenac zoning ordinance. Some opposition from West End Park residents surfaced. The recommendations of Team Four were not adopted by the city.

In 1987 plaintiffs applied for rezoning from R–2 to C–1. After a hearing the Planning and Zoning Commission of the city recommended approval of the rezoning to the Board of Aldermen. Following a public hearing, which included protests from some residents of the subdivision located north of Cable Avenue, the Board voted 5–1 to deny the rezoning. This suit followed. After trial the court found the "current R–2 residential zoning of the property is unreasonable, arbitrary, capricious and confiscatory" and ordered the city to rezone Block 18 to "an appropriate category."

■ On appeal the city raises two contentions of error. The second is that the city strictly complied with the procedural requirements of the state enabling statute—Chapter 89 R.S.Mo.1986—and therefore the refusal to rezone cannot be unreasonable. That is a non-sequitur. Such a conclusion would render court review of zoning decisions illusory and nonexistent. A court would be restricted to examination only of the procedure followed and would be unable to set aside zoning determinations no matter how arbitrary, capricious, unreasonable or confiscatory if the statutory procedures were followed. The point is patently frivolous.

■ The only point we need review is whether the question of rezoning the subject property was fairly debatable. *Huttig v. City of Richmond Heights,* 372 S.W.2d 833 (Mo.1963) [5–8]. Zoning, rezoning, and refusals to rezone are legislative acts. *Erigan Company, Inc. v. Town of Grantwood Village,* 632 S.W.2d 495 (Mo.App.

1982) [1, 2]. As such we review, de novo, challenges to validity of such decisions. *Elam v. City of St. Ann*, 784 S.W.2d 330 (Mo.App.1990) [3]. A zoning ordinance is presumed valid. *City of Ladue v. Horn*, 720 S.W.2d 745 (Mo.App.1986) [3–5]. The burden of establishing unreasonableness is upon the party challenging the ordinance. *Erigan, supra.* [1, 2].

■ Because the power to zone originates from the municipality's police power zoning restrictions can not be imposed unless they "bear a substantial relation to the public health, safety, morals or general welfare." *Huttig, supra.* [2]. As stated in that case:

"The basic question here really is this: considering all these circumstances and facts, is the extent of the public interest and welfare great enough to outweigh the demonstrated detriment to the individual interests, and in the final analysis is this question a debatable one." *Id.* [5–8].

■ It is the plaintiffs' burden in the first instance to establish that the detriment of the existing zoning to them outweighs the benefit to the general public. *Elam, supra.* [4]. Once they have satisfied that burden the court then determines whether the evidence of the municipality makes continuance of the existing zoning fairly debatable. *Elam, supra.* [4]. No one factor is dispositive in balancing public versus private interests. Each case stands on its own facts and circumstances. *Huttig, supra.* [5–8].

■ Plaintiffs established that the value of their property as presently zoned is markedly less than its value if zoned commercial. They also established that its location in the middle of commercial development made it less than desirable as residential property. Traffic congestion and parking problems are far greater than usually encountered in residential areas. There was evidence that one of the plaintiffs had been unsuccessful in attempting to sell her home. The homes located in Block 18 are modest and far pre-date the development of German Blvd. as a commercial area. Both *Huttig, supra* and *Despo-*

*tis v. City of Sunset Hills*, 619 S.W.2d 814 (Mo.App.1981) involved comparable situations. In both the court found the refusal to rezone to commercial to be unreasonable. Both can be distinguished by the fact that they involved entirely vacant land and fronted on busier streets than that involved here. But the present use of the land as residential does not require that an unreasonable use be continued indefinitely. The neighborhood has drastically changed since the original building of the residences and since the original zoning. The teaching of *Huttig* and *Despotis* is that municipalities may not ignore such changing neighborhood patterns in assessing requests for rezoning, nor may they force property owners in a commercial area to serve as a buffer to protect nearby residential areas.

Plaintiffs provided substantial evidence that the highest and best use of the property was commercial. The city expert did not dispute that assessment but contended only that either residential or commercial zoning was justified. Use of the property for commercial purposes was proposed by the city's consultant—Team Four. The zoning and planning commission of the city recommended rezoning to commercial.

The city asserts the refusal to rezone was correct for essentially two reasons. First it argues, that its set-back requirements (110 feet) would make commercial development difficult or impossible. It is not clear exactly what set back requirements would apply to this parcel. It is clear from the record that the 110 foot set back requirement has been enforced by the city only on Lindbergh Boulevard. It was not enforced as to the Old Frontenac Square development which adjoins plaintiffs' property. The city also contends its parking requirements would make commercial development infeasible. The question before us is the reasonableness of the present zoning. The feasibility of any particular development of the property is irrelevant to that issue. *Renick v. City of Maryland Heights*, 767 S.W.2d 339 (Mo. App.1989) [4]. The record does not support a conclusion that no commercial usage could be made of the property.

The city also seeks to justify the refusal to rezone on the impact such rezoning would have upon the residential property north of plaintiffs' property, specifically the six residences on the north side of Cable Avenue. Some undetermined number of property owners in northern West End Subdivision had aggressively opposed the Team Four plan and the rezoning proposed therein. They also opposed this rezoning. The city now contends that the residences on Cable will be confronted with a commercial development and presumably should be protected from that. It is interesting that no similar concerns prevented the commercialization of Lindbergh, the granting of a conditional use permit for the Racquet Club, the development of Old Frontenac Square, or the zoning to C–1 south of German Boulevard down to Gold Dust Avenue. *Huttig* firmly established that neighboring property owners are not the "public" and their collective interests are not the "public interest" which must be weighed in any rezoning inquiry. The city's reliance on *Tealin Company v. City of Ladue,* 541 S.W.2d 544 (Mo. banc 1976) is misplaced. There the property involved was in a totally residential neighborhood. Commercial development had occurred across Lindbergh in another community but Ladue had not allowed such development in the area surrounding the subject property. In distinguishing *Huttig* the court utilized language equally applicable here:

"Although not stated as such in the *Huttig* decision, it appears that whatever claim of reasonableness Richmond Heights may have had in the past for residential zoning on Clayton road west of Hanley Road had long since been abandoned by its own acts in extensively rezoning the property west of Huttig's to commercial and allowing the commercial development of the property to take place." [2].

The city has advanced no substantial public interest which would be served by continuation of the present zoning. Plaintiffs have adduced substantial evidence of the damage and injury to their property interests from the present zoning. We are unable to conclude that the issue is fairly debatable.

Judgment affirmed.

SATZ and CARL R. GAERTNER, JJ., concur.