**LENETTE REALTY & INVESTMENT COMPANY, Respondent/Cross–Appellant,**

v.

**CITY OF CHESTERFIELD, Appellant/Cross–Respondent.**

**No. ED 76404.**

Missouri Court of Appeals, Eastern District, Division One.

Oct. 17, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 2001.

Application for Transfer Denied Feb. 13, 2001.

Douglas R. Beach, Robert M. Heggie, Patrick I. Chavez, Beach, Stewart, Heggie & Mittleman, L.L.C., St. Louis, for appellant.

Mary M. Bonacorsi, John S. Farmer, Thompson Coburn LLP, St. Louis, for respondent.

JAMES R. DOWD, Judge.

The City of Chesterfield appeals from the trial court's Order and Judgment finding that it acted arbitrarily and unreasonably in denying Lenette Realty & Investment Company's petition requesting the rezoning of three adjoining tracts of land. Lenette cross-appeals, arguing that the trial court should have imposed Lenette's rezoning plan on the City and awarded damages for the delay in rezoning. We affirm.

## FACTS

We view the evidence in the light most favorable to the city council's decision.

*Village Lutheran Church v. City of Ladue*, 935 S.W.2d 720, 722 (Mo.App. E.D.1996). Lenette owns a 0.80 acre parcel of land (Tract 1) at the Southwest corner of Clayton and Baxter Roads in the City of Chesterfield. The other three corners of the intersection are commercial. The Northeast corner has a supermarket and a strip mall and there are gas stations on both the Northwest and Southeast corners. Tract 1 was originally zoned "C–2" commercial by St. Louis County in the 1960's under a Conditional Use Permit, which allowed the operation of a service station. Lenette operated a service station on Tract 1 until 1993, when the widening of Clayton and Baxter Roads took a portion of the land and restricted access to the station. Lenette alleged that this made the parcel's use, as a service station, no longer economically feasible.

In 1988, Lenette entered into negotiations to buy the land immediately south of Tract 1. That land consists of a 2.97 acre parcel (Tract 2) and a 0.43 acre parcel (Tract 3), both owned by NationsBank.[1] Tract 2 is zoned as a "C–8" planned commercial district allowing only the operation of a bank with drive-through lanes. A branch office of the bank has been operated on Tract 2 since 1974. Bank officials testified that the building on the site is one of the ten smallest facilities of NationsBank's 700 banks in the Midwest, and only one-third the size of a commercially viable modern equivalent. Consequently, NationsBank plans to close it. Tract 3 is a small undeveloped parcel immediately west of tract 3 zoned "R–2" residential.

In 1990, Lenette entered into a contract with NationsBank to purchase Tracts 2 and 3, subject to the City's approval of a rezoning plan. Lenette planned to build a Walgreens drug store and several small specialty retail shops on the site. Lenette supported its offer to buy the tracts with $25,000 in earnest money deposited in an escrow account. As part of the sale contract, NationsBank agreed to lease a portion of the property for continued operation of a new and more accommodating bank facility. In March 1990, Lenette submitted its first petition to the City requesting that the entire property be rezoned to "C–8." Lenette's plan proposed a total of 31,000 square feet of retail and office space and was approved by the City Department of Planning and Economic Development (Planning Department) subject to several conditions. Lenette complied with the conditions and made changes to the proposed development plan, although certain issues remained unresolved, including the number of street entrances to the bank. Both the Planning Department and the Planning Commission ultimately recommended approval of Lenette's plan to the City Council, but before the City Council voted Lenette withdrew its petition to resolve the street entrance issue with the bank.

On April 9, 1996, NationsBank and Lenette entered into another sale and leaseback contract for Tracts 2 and 3, again contingent upon the City's rezoning. In December 1996, Lenette submitted its second petition for rezoning to the City with its proposal for a Walgreens, bank, and specialty shops. This new proposal reduced the total building area to approximately 29,920 square feet, consisting of two freestanding buildings and an ATM. The buildings were to stand on Tracts 2 and 3, with Tract 1 used to provide the required on-site storm water detention basin. In addition, the plan complied with several concerns raised by owners of six single-family homes located near the proposed development, just west of the Chesterfield City limits in Ballwin. Additional conditions imposed on behalf of these homeowners included the preservation and construction of more "green space," in-

---

**1.** Since the filing of this lawsuit, NationsBank, formerly Boatmen's Bank, merged with and assumed the name "Bank of America." For simplicity, we will refer to Bank of America as NationsBank because most of the evidence in the record uses the name NationsBank.

creased building setbacks from the western property line, the erection of a ten foot high masonry fence and several other aesthetic improvements; all of which Lenette agreed to and incorporated into the development plan.

On February 24, 1997, the City Planning Commission conducted a public hearing on Lenette's petition. During review of the petition, city staff requested that Lenette employ a traffic consultant to analyze the potential impact of the development on the Baxter and Clayton Road traffic flow. Lenette hired a traffic consultant, whose final report concluded the proposed development would have no discernable impact on traffic conditions. The City then asked St. Louis County and the Missouri Department of Transportation to review the traffic report. Both agencies concurred with the traffic report, but recommended that several road improvements, including additional turn lanes, should be incorporated into the plan. Lenette agreed to perform the road improvements at its own expense.

On April 28, 1997, the city Planning Department issued its report advising the Planning Commission that Lenette's plan was consistent with the City's overall Comprehensive Plan and recommending that Lenette's petition for rezoning be approved, subject to several conditions attached to the report. These conditions included use restrictions, building area and height requirements, landscaping and fencing criteria, setback conditions, parking requirements, road improvements, and signage restrictions. Lenette agreed to comply fully with every condition recommended by the Planning Department's report and modified its site plan accordingly. Moreover, at the City's urging, Lenette organized meetings with area residents to gain input for making the plan more appealing to the surrounding area.

On May 12, 1997, despite the Planning Department's recommendation for approval, the Planning Commission voted 5–2 to deny Lenette's petition for rezoning. The Commission gave no reason for its denial, although the Commission's letter informing the City Council of its decision stated Lenette's proposed use was "too dense and too intense." In an attempt to appease the Commission, Lenette submitted a revised plan on August 1, 1997, reducing the total building area by an additional 10% to 26,893 square feet. Nevertheless, the City Council's Planning and Zoning Committee voted 3–0 to deny the petition. On August 18, 1997, Lenette's petition went before the entire City Council and was defeated unanimously.

On September 18, 1997, unable to secure the necessary zoning changes from the City, Lenette terminated its contract with NationsBank for the sale of Tracts 2 and 3. The earnest money remained in escrow. On February 16, 1998, representatives of Lenette and NationsBank executed Amendment 6 to the original contract, which revoked the prior termination of the contract and extended the contingency period so that the contract would remain in full force and effect. The next day, February 17, 1998, Lenette filed suit in equity against the City of Chesterfield requesting that the trial court declare the City's zoning ordinance unconstitutional, order the City to rezone Tracts 1, 2 and 3 according to Lenette's petition, and award damages. NationsBank was not a party to the suit.

During trial, Lenette presented uncontroverted expert testimony that under the existing zoning the property was worth $450,000 and that if rezoned according to Lenette's proposal, it would be worth $2,450,000. The appraiser also testified that he conducted a study of the density of surrounding developments as measured by the land-to-building ratio. The typical density of comparable neighborhood retail centers had a land-to-building ratio of 4.5 square feet of land for every 1 square foot of building, or 4.5:1. Of the twenty-eight developments surveyed, Lenette's proposal had the lowest density at 6.8:1. Chesterfield retail centers in the immediate vicinity of Baxter and Clayton roads had densities far higher than that proposed by

Lenette. In addition, the appraiser testified that the highest and best use of the subject property that the market would bear would be a commercial development of 40,750 square feet with a density of around 4.5:1.

Lenette also presented expert testimony that the proposed development would have no significant traffic impact on the Clayton and Baxter intersection. Lenette called City's Assistant Director of Planning, who testified that the City had no traffic experts on its staff and that both St. Louis County and the Missouri Department of Transportation reviewed and confirmed Lenette's original traffic study.

A City councilman testified that the City had recently approved neighborhood retail centers, adjacent to residential areas, with densities far in excess of Lenette's proposed site plan. The two City council members testified that their concern over increased traffic was based only on speculation and that they had no way of knowing whether their concerns were valid. Moreover, council members testified that one of the reasons they denied Lenette's petition was to protect adjacent property owners.

Lenette also presented evidence that during the City's review of Lenette's petition, neighboring retailers, including the owner of a nearby pharmacy, launched an orchestrated campaign against Lenette's proposed development. The councilman testified that the City Council received hundreds of pre-printed postcards stating that Lenette's proposed development would adversely affect local merchants.

On May 20, 1999, after three days of trial, the court entered its Judgment and Order finding that the present zoning as applied to the subject property is arbitrary, capricious and unreasonable, stating:

The detriment to plaintiff as a result of the continuance of Chesterfield's current zoning on the Site is substantial and significant as reflected in plaintiff's financial loss which would be realized if the zoning is not changed. There is no public benefit to be derived by continuance of Chesterfield's present zoning of the Site. Chesterfield presented no evidence at trial suggesting any public benefit that would outweigh the private detriment plaintiff would suffer under a continuance of the current zoning. In fact, the record reveals that the action of the Council was fueled by concerns for competitors on the adjoining commercial sites and not by legitimate concerns. Indeed it appears that the council members applied personal subjective standards instead of legal objective standards.

The trial court declared the current zoning null and void and ordered the City "to place a reasonable zoning classification on the properties ..." The court did not provide a deadline for the imposition of the new zoning nor did it order City to approve Lenette's zoning proposal. On June 2, 1999, Lenette filed its Motion to Alter and Amend Judgment, requesting that the trial court require the City to rezone the subject property in accordance with Lenette's petition within thirty days. The court denied Lenette's motion on June 21, 1999. The City filed its Notice of Appeal on June 24, 1999, and Lenette filed its Notice of Cross Appeal on July 14, 1999.

## I. Standing

■ Initially, Chesterfield contends the trial court erred in failing to dismiss Lenette's petition for lack of standing. The City argues that because Lenette terminated its contract with NationsBank for the sale of tracts 2 and 3 on September 16, 1997, it had no interest in tracts 2 and 3 and therefore lacked standing to bring suit to have those tracts rezoned. Lenette maintains that at the time the City denied its petition for rezoning, it had a viable contract for the sale of parcels 2 and 3 and amendment six to that contract conferred an identical property interest before suit

was filed, giving Lenette a sufficient protectable interest to confer standing.

In order to have standing to attach an administrative zoning decision, a plaintiff must demonstrate a specific and legally cognizable interest in the subject matter of the decision and show that the decision will have a direct and substantial impact on plaintiff's personal or property rights or interests. *Citizens for Safe Waste Management v. St. Louis County,* 810 S.W.2d 635, 639 (Mo.App. E.D.1991). Missouri courts do not require that a party challenging a zoning decision own the subject property or an adjacent property in order to assert standing; it is enough that the party has a contractual right to buy the subject property. *State ex rel. Westside Development Co., Inc. v. Weatherby Lake,* 935 S.W.2d 634, 637 (Mo.App. W.D. 1996); *Waites v. St. Louis County,* 484 S.W.2d 245, 247–248 (Mo. banc 1972). To confer standing, the zoning decision must act more distinctly and directly on the interest of the person claiming standing than on the public generally. *Weatherby Lake,* 935 S.W.2d at 637.

It is undisputed that Lenette, as the owner of Tract 1, had standing to challenge the City's denial of its proposed rezoning plan for Tract 1. If Lenette had a valid contract to purchase Tracts 2 and 3 when it challenged the Commission's denial, it follows that it had standing to file suit to protect its right to develop all three tracts. Lenette concedes that the contract for Tracts 2 and 3 terminated on September 16, 1997, but contends that amendment six voided that termination before suit was filed. Amendment six purports to rescind the prior notice of termination of the contract between Lenette and NationsBank and extend the contingency period to encompass the time period from their original request for rezoning through the present. It is a valid and binding contract, supported by $25,000 in earnest money, which the record reflects both Lenette and NationsBank signed prior to filing suit. Importantly, amendment six is a writing that expresses NationsBank's intent to sell and Lenette's intent to purchase Tracts 2 and 3 if Chesterfield approved Lenette's proposed rezoning plan. Without the City's approval, the sale of the two tracts would not take place. This option to buy in order to develop was a protectable interest in real estate, giving Lenette the right to sue in an effort to accomplish the rezoning that would allow them to consummate the contract. At the time the zoning was denied, Lenette had a protectable interest in the real estate in question and at the time suit was filed they again, by virtue of amendment six, had a protectable interest in the same real estate. Chesterfield cites no authority for its claim that amendment six should be ineffective, nor does it claim that amendment six was executed for an improper purpose. Point denied.

## II. Private Detriment

In its second point on appeal, Chesterfield claims the trial court erred in denying its motion to dismiss because the trial court improperly relied on the economic "highest and best use" standard rather than the "reasonable use" standard in showing private detriment. Since zoning and refusal to rezone are legislative acts, we review *de novo* any challenges to their validity, with deference to the trial court's ability to assess the credibility of witnesses. *Wells & Highway 21 Corp. v. Yates,* 897 S.W.2d 56, 60 (Mo.App. E.D. 1995).

Zoning ordinances are presumed to be valid and the challenging party bears the burden of proving the unreasonableness of maintaining the existing zoning. *J.R. Green Properties, Inc. v. City of Bridgeton,* 825 S.W.2d 684, 686 (Mo.App. E.D.1992). Any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor. *Id.* Determining the validity of a zoning provision involves a two-step analysis. First, the court determines whether the challenging party has presented sufficient evi-

dence to rebut the presumption that the present zoning is reasonable. Then, if the presumption has been rebutted, the court determines whether the government's evidence establishes that the reasonableness of the zoning is "fairly debatable." *Yates,* 897 S.W.2d at 61.

 The initial determination of whether plaintiff has set forth sufficient evidence to rebut the presumption of validity is made by balancing the private detriment to the challenging party against the public interest in retaining the existing zoning. *Elam v. City of St. Ann,* 784 S.W.2d 330, 334–35 (Mo.App. E.D.1990). Plaintiff must show that the private costs of failure to rezone outweigh the benefit the general public enjoys by retaining the existing zoning designation. *Id.* Factors considered by the court in establishing plaintiffs' detriment include the adaptability of the subject property to its zoned use and the effect of zoning on property value. *Id.* While not the only factor, "the value of the subject property has regularly reflected the property's unadaptability to its zoned use." *Id.* at 336.

 The City claims the trial court erred in considering the "highest and best" economic use of the property when it weighed the private detriment against the public's interest in maintaining the current zoning. The City contends the trial court should have used a "reasonable" use standard. According to the City, this would mean that because Lenette could have put the subject property to a "reasonable" use, it cannot show private detriment. We disagree.

 The City is correct in its assertion that the "highest and best" use, or the use that affords the property owner the highest economic value, should not be the controlling factor in the court's determination of private detriment. The very nature of zoning ordinances is to restrict the use of land. If courts employed a "highest and best" use standard, any landowner whose property was in any way diminished in value owing to a zoning restriction could overturn the zoning ordinance. This would clearly circumvent the beneficent principles at work in a comprehensive zoning scheme. Courts, therefore, consider a property's *reasonable* use in measuring an owner's private detriment. Although the trial court used the words "highest and best use" in its order, Lenette's proposed use of the property was a reasonable commercial use, consistent with the uses to which the surrounding properties at that intersection are put. And a reasonable use is a sufficient showing to support the judgment. Interestingly, the expert testimony established that the "highest and best" commercial use of the subject property was actually a 40,750 square foot development, well above the 26,893 square foot plan proposed by Lenette. We find Lenette's plan to be reasonable.

 The uncontroverted evidence at trial indicates that Tracts 1, 2 and 3 would be worth $2,000,000 less without the proposed rezoning. The City offers no evidence disputing this figure, but instead asserts the trial court erred in considering such economic disparity in determining Lenette's private detriment. Missouri courts have always allowed evidence of disparity in value in determining whether there is a private detriment. *See Huttig v. City of Richmond Heights,* 372 S.W.2d 833, 840 (Mo. banc 1963); *Loomstein v. St. Louis County,* 609 S.W.2d 443, 447 (Mo. App. E.D.1980); *Herman Glick Realty Co. v. St. Louis County,* 545 S.W.2d 320, 324 (Mo.App.1977); *Elam,* 784 S.W.2d at 335–336; and *Wells,* 897 S.W.2d at 61. The undisputed evidence also established that the existing branch and abandoned service station are outdated and ill suited to further use on the property.

The City claims Lenette could have found reasonable uses for Tracts 1, 2 and 3 under the current zoning designation. But the city never addresses how the property's current use is reasonable nor the uncontroverted evidence that a modest development conforming to the surrounding

commercial environment would add an additional $2,000,000 to its value.

■ Finally, the City claims Lenette failed to show a private detriment because they failed to call a "land use expert" to testify that the land's current use was unreasonable. The City cites no authority for the proposition that a "land use expert" is necessary to make a submissible challenge in a zoning case. Lenette called a real estate appraiser and a real estate developer, both qualified experts, to testify to Lenette's private detriment. In addition, a NationsBank officer testified to the current bank's lack of commercial viability. All of this testimony shows that the use of the property under the existing zoning is unreasonable. We find that Lenette adequately demonstrated that it suffers substantial private detriment under the existing zoning. Point denied.

### III. Public Interest

■ In its third point, the City asserts that the trial court erred in denying its motion to dismiss because Lenette failed to show that its private detriment outweighs the public's interest in maintaining the existing zoning. As stated above, in order to rebut the presumptive validity of the City's zoning ordinances, Lenette must initially pass a balancing test. It is not enough that Lenette prove its private detriment. It must also show that the detriment it suffers outweighs the public's interest in maintaining the existing zoning. *Huttig*, 372 S.W.2d at 842.

The express reason the City gave for denying Lenette's petition for rezoning was that the proposed development was "too dense and too intense." The City offered no explanation of what this means or how it applies to a proposed development with a density well below that of other approved developments. The City never articulates what public interest motivated their decision to deny Lenette's petition. The City mentions traffic reasons as one of the factors it considered in denying the petition, yet council members conceded at trial that their traffic concerns were lacking a factual basis. More importantly, the independent traffic study, reviewed and approved by St. Louis County and the Missouri Department of Transportation, concluded there would be no discernible increase in traffic as a result of Lenette's proposed development. There was, in sum, no evidence to justify a conclusion that traffic flow is here a valid public interest concern warranting denial of the requested rezoning change.

■ The City next argues the interest of adjacent homeowners, all of whom apparently live in Ballwin, as support for its public interest argument. Curiously, the City never states how these neighbors will be negatively affected by Lenette's proposed development. In fact, the record reflects that Lenette made several changes in its site plan to accommodate these homeowners, including landscaping, setback provisions, green space improvements and the construction of a ten-foot masonry privacy wall. Furthermore, Missouri case law is clear that the interests of a few neighboring homeowners do not constitute the public interest as a whole. *Huttig*, 372 S.W.2d at 843; *Loomstein*, 609 S.W.2d at 450. In *Huttig*, the Missouri Supreme Court was faced with the concerns of four homeowners who were displeased at the notion of adjacent land being rezoned for commercial development. In referring to those homeowners, the Court stated: "They, alone, do not constitute the *public*, and their collective interests are not that 'public interest' which must be weighed in any such zoning problem." *Huttig*, 372 S.W.2d at 843.

■ We conclude, as the trial court did, that the real interest involved in the City's decision was that of neighboring business owners opposed to competitors entering their market. The City wisely avoids any express reliance on these competitive interests, as municipalities are strictly prohibited from taking competitive considerations into account in zoning deci-

sions. "[A]dministrative tribunals vested with power and authority to implement zoning laws may not use such power and authority as a ruse to regulate business and restrict competition." *Technical & Professional Services, Inc. v. Board of Zoning Adjustment of Jackson County,* 558 S.W.2d 798, 801 (Mo.App.1977). Given the lack of any plausible public interest and the orchestrated campaign against the zoning change, it is reasonable to infer that City officials were swayed by the anti-competitive outcry of area business owners.

After a thorough review of the transcript, legal file and briefs in this case, it is apparent that the alleged public interests advanced by the City are purely pretextual and that there is little, if any, viable public interest that militates against Lenette's proposed development. We therefore agree with the trial court that Lenette demonstrated that its private detriment far exceeds any public interest. Point denied.

### IV. Fairly Debatable

■ The City, in its fourth and final point on appeal, insists that the trial court erred in denying its motion to dismiss because the City's failure to rezone was "fairly debatable." Once a plaintiff has rebutted the presumptive validity of a zoning ordinance, as we hold Lenette has, a reviewing court must then determine whether the government's evidence establishes that the reasonableness of continuing the present zoning is a fairly debatable issue. *Wells,* 897 S.W.2d at 61. If the issue is at least fairly debatable, the reviewing court may not substitute its opinion for that of the zoning authority that enacted the challenged ordinance. *Elam,* 784 S.W.2d at 335. If the government can offer no evidence that the current zoning serves a valid public interest, there is no debatable issue. *Home Bldg. Co. v. City of Kansas City,* 609 S.W.2d 168, 173 (Mo. App. W.D.1980).

The evidence presented at trial establishes Lenette's detriment and the property's unadaptability to its current zoning. The City has offered no evidence to controvert these findings nor has the City advanced any public interest that would militate against granting Lenette's petition for rezoning. The City has, therefore, failed to carry its burden of establishing that its decision to deny the petition was "fairly debatable." Point denied.

### V. Lenette's Cross–Appeal

■ Lenette raises three points of error in its cross-appeal. First, Lenette claims that the trial court erred by failing to impose a deadline on the City to comply with its order. Neither party disputes that the trial court has the inherent authority to enforce its judgments. *Lake Thunderbird Property Owners Association, Inc. v. Lake Thunderbird, Inc.,* 680 S.W.2d 761 (Mo.App. E.D.1984). Implicit in the trial court's order is that the City will adopt a reasonable zoning classification for the subject property within a reasonable time. Absent any evidence in the record suggesting the City has failed to abide by the trial court's decree, this court will not impose a deadline on the trial court's order. Should the City unnecessarily delay the imposition of the rezoning, Lenette may petition the trial court for enforcement of its order. Point denied.

■ Lenette's second point claims the trial court erred in failing to *order* the City to adopt Lenette's proposed plan for rezoning. We have been unable to find, and Lenette does not cite any Missouri law for a court to dictate to a municipal body how to zone property within its boundaries. Any such judicial command to a legislative body raises serious questions regarding the constitutionally mandated distinction between the legislative and judicial branches of this state's government. The Supreme Court addressed this issue in *Huttig.* There, as here, property owners sought the Court's power to order adoption and enforcement of a new zoning re-

striction after the court determined that the existing zoning restriction was invalid. The Court's resolution of that issue is instructive: "It is not our function to prescribe what commercial use shall be permitted on this property, especially since no specific plan or proposal has been filed." *Huttig*, 372 S.W.2d at 844. In this case, the trial court ordered the City "to place a reasonable zoning classification on the properties ..." While we are mindful that Lenette, unlike the property owner in *Huttig*, has set forth a detailed plan for rezoning which complies with all of the conditions mandated by the Planning Department and the Planning Commission we decline Lenette's invitation to reverse the trial court and order adoption of Lenette's proposed development. Point denied.

In its third point Lenette claims the court erred in failing to award Lenette two million dollars in damages as well as the attorney's fees expended because of the City's denial of Lenette's petition to rezone. The only authority Lenette cites in support of their claim is *Robinson v. City of Raytown*, 606 S.W.2d 460 (Mo.App. 1980). *Robinson* was an appeal from the trial court's dismissal of a landowners' claim for damages and attorneys' fees under 42 U.S.C. § 1983. At trial the landowners successfully attacked the validity of an ordinance passed by the Board of Aldermen of the City of Raytown rezoning certain property they owned. The court of appeals *affirmed* the trial court's dismissal of the landowners' claim for damages and attorneys' fees because the landowners failed to plead facts sufficient to state a claim under 42 U.S.C. § 1983. *Id.* at 465–66. Here the trial court did not dismiss Lenette's claim for failure to state a claim, it *ruled against* Lenette. *Robinson* thus provides no support for the claim that Lenette was entitled to a judgment in its favor on the issues of damages and attorneys' fees. Bound as we are by the standard of review in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we affirm the trial court's denial of monetary damages and attorneys' fees.

The judgment of the trial court is affirmed on all points.

GARY M. GAERTNER, P.J., and SIMON, J., concur.